UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| STEVE TANNER<br><br>Petitioner,<br><br>v.<br><br>IDAHO DEPARTMENT OF FISH AND GAME DIRECTOR ED SCHRIEVER, VIRGIL MOORE, LUCAS SWANSON, JOSH STANLEY, BRIAN JOHNSON; and WILLIE COWELL<br><br>Respondent. | Case No. 2:18-cv-00456-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Plaintiff Steve Tanner's Motion requesting ECF Notifications (Dkt. 41) and Motion to Compel (Dkt. 42). Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

## II. BACKGROUND

Idaho Fish and Game ("IFG"), a government agency, utilizes wildlife check stations to manage Idaho's wildlife resources. At these wildlife check stations, IFG officers stop all vehicles passing through and inquire if the driver and/or passengers have been hunting, fishing, or trapping. If the answer is no, the officers ask no further questions and the vehicle

proceeds on its way. These stops are rarely longer than a few seconds. If the answer is yes, the officers spend a few minutes collecting data, receiving public input, and, if necessary, enforcing state laws that pertain to the management and conservation of wildlife resources.

In the early evening of November 18, 2017, Tanner was traveling southbound on Meadow Creek Road, located in Boundary County. At that time, Defendants Lucas Swanson, Josh Stanley, and Brian Johnson, employees of IFG, were operating a wildlife check station on Meadow Creek Road. As Tanner arrived at this station, he proceeded around it without stopping. Defendants Swanson and Stanley pursued Tanner in their patrol vehicle and arrested him for failing to stop at the check station.

### III. LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). If a party served with discovery fails to adequately respond, the serving party may file a motion to compel pursuant to Federal Rule of Civil Procedure 37(a). A court has broad discretion in deciding whether to compel discovery. *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002).

### IV. ANALYSIS

As an initial matter, Tanner requests Notice of Electronic Filings ("NEF") and the ability to e-file documents.[1] Tanner argues that the trip to the nearest courthouse is time consuming and costly, and that he does not wish to be delayed by mailing his filings or by

---

[1] It should be noted that Tanner received NEF from October 17, 2018 to June 18, 2019, due to a clerical error. Once the Court noticed the error, it stopped sending Tanner NEF.

having any other filings mailed to him.

Typically, the Court does not send NEF to pro se parties, neither does it allow pro se parties to e-file documents.[2] The Court sees no reason to differ from its policy here. Tanner has done well with his current options thus far; he may continue to file in person or he may elect to mail in his filings. Any delay in Tanner's filings does not create an uneven playing field, as he argues, because how or when he files a document does not affect how the Court reviews that document. Thus, based on the Court's longstanding policy and Tanner's current abilities, his Motion for ECF Notifications (Dkt. 41) is DENIED.

The Court now turns to Tanner's Motion to Compel. In this motion, Tanner makes several arguments regarding a variety of IFG's responses. The Court will address each in the order Tanner argues them.

1. **Swanson's Response to Request for Admission 45[3]**

In this discovery request, Tanner seeks to establish Swanson as the person who created certain audio recordings. Swanson admitted that the conversations were recorded but does not admit whether he was the one who recorded any of them. In Tanner's opinion, this response is inadequate, and the Court should deem it as admitted.

The Court understands Swanson's error, but determines that the response was inadequate as it does not directly answer Tanner's request. Thus, the portion of Tanner's motion that relates to Swanson's Response to Request for Admission No. 45 is GRANTED

---

[2] The Court's policies and procedures can be found on its website:
https://www.id.uscourts.gov/clerks/ecf/ECF_Registration_Process.cfm
[3] Tanner, in his motion, refers to these requests in different ways. For clarity, the Court labels each request as a request for admission, a request for production, or an interrogatory.

in PART and DENIED in PART. The Court will not order that the matter is admitted but elects instead to order an amended answer. Fed. R. Civ. P. 36(a)(6). Swanson is hereby ordered to amend his response and must admit or deny whether he recorded the incident at Three Mile Gas Station.

**2. IFG Director Ed Schriever's Responses to Requests for Production 25–26**

In this request, Tanner seeks all documents as to the time, date, and location of all IFG game check stations that were classified as an "ALL traffic stop" from September 25, 2013 to May 1, 2019.[4] Schriever objected to the request as being overbroad and disproportionate to the needs of the case but provided Tanner with the requested documentation anyway.

Tanner acknowledges that Schriever has provided these documents but makes two separate arguments against them. First, Tanner believes that Schriever's objections are improper because the breadth and the proportionality of his request are appropriate. Second, Tanner feels that the responses are lacking and seeks independent certification that Schriever has complied with his discovery request. Considering how Tanner uses these arguments throughout his motion, the Court will analyze them separately here.

   a. *Appropriateness of Objections*

Both the Court and Tanner view this case as one dealing primarily with Tanner's rights under the Fourth Amendment.[5] The Court agrees with Tanner that constitutional

---

[4] To be exact, Tanner requests every date in this range except for December 31, 2016. The Court is unsure why Tanner chose to exclude that date.
[5] In Tanner's Amended Complaint (Dkt. 4) he lists 3 causes of action: (1) Fourth and First Amendment violations, (2) Illegal Seizures Due to Unconstitutional Policies, and (3) Unlawful Seizure and Punishing the Plaintiff for Remaining Silent. Additionally, throughout Tanner's briefing in this case, he consistently

rights are of the utmost importance. Further, the importance of these rights factor into the scope of discovery. Fed. R. Civ. P. 26(b)(1) (explaining that the scope of discovery "consider[s] the importance of the issues at stake in the action"). This does not, however, give Tanner *carte blanche* to demand that IFG complies with every request he feels is appropriate. Even though IFG may have violated his constitutional rights, the scope of discovery must still have a limit.

For example, in one of Tanner's requests he seeks IFG's policies regarding the wildlife check stations from 1975 to the present day. Though this request will lead to more facts, Tanner's success in this case does not rely on what IFG's policies were nearly forty-five years ago. The issue here is not how many times IFG may have violated Idahoans' rights over the past forty-five years, but if IFG's practice of stopping non-sportsmen violated constitutional rights at all. Whether IFG utilized 10,000 checkpoints or one, Tanner must show that when *he* was stopped *his* constitutional rights were violated. Tanner does not allege—nor could he—that IFG stopped him at every one of these checkpoints from September 25, 2013 to May 1, 2019. By including large year ranges or asking for "all" documents, of which very few, if any, are relevant to himself, Tanner runs the risk of pushing his requests outside the scope of discovery.

   b. *Independent Certification for Discovery Request Compliance*

Similarly, Tanner's repeated insistence on independent verification that IFG has

---

refers to his desire to enjoin the State of Idaho from utilizing allegedly unconstitutional wildlife check stations as the purpose for this suit. Though he makes minor assertions against the officers who arrested him, clearly the crux of this case is his rights under the Fourth Amendment and its state counterpart, Article I Section 17 of the Idaho Constitution.

complied with his discovery requests is unnecessary. Throughout his motion, Tanner continually questions the scrupulousness of IFG's searches and disclosures. He relies on language in a D.C. Circuit case to support his position: "It is elementary that an agency responding to a [Freedom Of Information Act] request must conduct a search reasonably calculated to uncover all relevant documents, and, if challenged, must demonstrate beyond material doubt that the search was reasonable." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990) (internal quotations omitted). As additional authority, Tanner also relies on the Court's Discovery Plan where the Court ordered each party to "identify an ESI Liaison who is responsible for and knowledgeable about (or has access to a person knowledgeable about), that party's ESI." Dkt. 39, at 7. He points out that IFG has not identified an ESI Liaison as required, and IFG admits they have not.

This is an opportune time for the Court to pause its analysis and remind both parties that the Court expects all parties, whether represented or not, to comply with its orders. As IFG does not dispute that they have not identified an ESI Liaison, the Court hereby orders IFG to identify an ESI Liaison consistent with the Discovery Plan.

Tying this order back to Tanner's argument, requiring IFG to identify an ESI Liaison is not the same as requiring IFG to employ a certified ESI forensic examiner. Tanner urges that the only way to be satisfied with IFG's responses is if a certified ESI forensic specialist searches all computers, cell phones, and other electronic devices in IFG's possession. That is simply not how discovery works. Though it is understandable why Tanner may feel IFG is withholding information, after reviewing the briefs and the record, nothing the Court is aware of causes it concern over the way IFG has responded to

Tanner's discovery requests. Objections of the type Defendants make here are common in litigation. The mere presence of an objection to a discovery request does not trigger a need to examine the objecting party's ability to respond to the request.

As such, the Court at this time will not require any sort of independent certification regarding the discovery that the parties have already completed. Furthermore, the *Truitt* case Tanner relies on deals with requests under the Freedom of Information Act, not litigation discovery requests. The Court declines to adopt a baseline standard requiring parties, when challenged, to demonstrate beyond material doubt that the search was reasonable with regard to litigation discovery requests.

   c. *Appropriateness of Schriever's Responses to Requests for Production 25–26*

Returning now to this specific request, the Court concludes that Schriever's responses were appropriate. After making a common objection to the discovery request—which the Court concludes is applicable—Schriever responded by providing Tanner with the information he requested. Rather than producing all documents as to the time, date, and location related to each of the dozens of IFG check stations, Schriever compiled a list of check stations, including the date and location of each station, as well as whether or not the check station was an "all traffic stop."[6] Dkt. 43, at 9–11. Based on the Court's discussion above, this is an appropriate response. Production of what would be—the Court assumes—

---

[6] As an exhibit to this motion, IFG attaches an example of this list. IFG also states that they sent more documents and attachments concerning this discovery request. Tanner has not addressed the sufficiency of these other documents and attachments outside of his general position that the response is incomplete. Without addressing the contents of the other documents directly, the Court simply holds here that IFG response was appropriate.

hundreds if not thousands of documents that have little relevancy to the merits of Tanner's case is disproportionate to the needs of the case.

To summarize, the Court concludes Schriever's responses to the relevant requests were proper. Additionally, the Court declines Tanner's request for some type of certification that Schriever and IFG have truly sent all the documents in their possession. As such, the portion of Tanner's motion that relates to Schriever's Responses to Requests for Production 25 and 26 is DENIED.

3. **Schriever's Responses to Request for Production 1–2, Interrogatories 1–3,[7] and Defendant Virgil Moore's Response to Request for Production 1–2.**

Here, each of the requests generally seek the same information. Likewise, each of the corresponding objections is similarly based. In these requests, Tanner seeks documents, emails, notes, and related types of communication that reference himself or any pseudonym[8] for himself from November 19, 2010 to December 31, 2018. Schriever and Moore base their objections on the disproportionality of the request to the needs of the case, to the vagueness of the request, and on the attorney-client privilege. Despite these objections, Schriever and Moore used Tanner's suggested pseudonyms and conducted a vast search involving multiple personnel and numerous computer systems. They then provided Tanner with the results of this search.

As the Court has already discussed the proportionality of the case and the need for

---

[7] Tanner made a separate argument for Schriever's Response to Interrogatory 3, but this request and its objection were similar enough to the others here that separate analysis was not warranted.
[8] Tanner's list of suggested pseudonyms includes: Steve Tanner, Tanner, Moyie guy, constitutionalist, roadblock, Meadow Creek Road, Meadow Creek check station, game check station roadblock, and game check station. Dkt. 42-1, at 6.

ESI or other verification, it suffices here to say that the Court again finds the request is disproportional to the needs of the case and that there is no need for any type of verification. In addition, the Court agrees with Schriever and Moore that this request is vague. It is one thing to request a party to search for every email or document that includes a person's name—proportionality objections aside—but it is completely different to further require that party to guess as to any pseudonym or nickname that person has and search for that as well. Neither Schriever nor Moore could determine every pseudonym that has been used to describe Tanner or his arrest at the Meadow Creek game check station. Instead, they used every term suggested by Tanner. The Court concludes that this action was appropriate.

Schriever and Moore also objected based on the attorney-client privilege. Notwithstanding, they provided Tanner with the information he requested. This leaves the Court uncertain as to whether Schriever and Moore withheld certain documents based on the privilege or disclosed everything they found regardless of the privilege.

With that in mind, the Court requires Schriever and Moore to disclose to Tanner whether any of the documents or emails from this request were kept on the basis of the attorney-client privilege. If they did not withhold any documents based on this privilege, then they need not take any further action. If either Schriever and/or Moore did withhold documents based on this privilege, however, then they must appropriately document them on a privilege log and disclose it in compliance with Federal Rule of Civil Procedure 26(b)(5)(A) and this Court's Discovery Plan.[9]

---

[9] Schriever and Moore argue that the Court's Discovery Plan does not require them to keep a privilege log. However, the Court's Discovery Plan states that only "[c]ommunications involving trial counsel that post-

In sum, Tanner's request is vague and disproportional to the needs of the case. Schriever and Moore's response was appropriate to the request, but they must disclose whether any of the documents or emails they obtained in their search were withheld based on the attorney-client privilege and must further document those on a privilege log, if applicable. Thus, the portion of Tanner's motion that relates to Schriever's Response to Request for Production 1 and 2, Interrogatories 1 and 2, and Moore's Response to Request for Production 1 and 2 is GRANTED in PART and DENIED in PART.

### 4. Schriever's Responses to Request for Production 37–40

Here Tanner seeks the IFG check station policies for each corresponding year from 1975 to the present day. Schriever believes that this request is ambiguous and disproportionate to the needs of the case. Just as with the other requests, though, Schriever searched for and produced documents anyway. He produced policies from the year 2000 to the present day but claims that he could not locate any policies from 1975–2000.

Tanner makes the same objections to Schriever's response here—that the documents produced are insufficient and someone needs to verify that Schriever searched and provided everything. The Court, incorporating its reasoning from above, finds that this request is overbroad and disproportionate to the needs of the case. Additionally, there is no need for verification that Schriever really did perform a reasonable search. Thus, portion of Tanner's motion that relates to Schriever's Responses to Request for Production 37–40

---

date the filing of the complaint need not be placed on a privilege log." Dkt. 39, at 9–10. Thus, emails or documents in this request that Schriever and Moore withheld pursuant to the attorney-client privilege and were also made before Tanner filed his Complaint, if any, must be documented on a privilege log.

is DENIED.

5. **Daily Enforcement Logs**

In this request Tanner seeks copies of Swanson, Stanley, and Johnson's respective daily enforcement logs on various dates in November 2010, November 2014, and November 2017. These defendants responded by providing documents that appear to be daily enforcement logs for the corresponding dates. Tanner takes issue with the word "summary" that appears at the top of some of the pages, believing that this word indicates missing information and that these defendants are withholding something.

The Court does not share Tanner's belief regarding any withholding but does share his concern that there might be information missing. As counsel for these defendants did not respond to Tanner's arguments here, the Court does not know whether the documents provided are in fact daily enforcement logs or if they are summaries of them. Thus, the portion of Tanner's motion that relates to Swanson, Stanley, and Johnson's daily enforcement logs is GRANTED in PART and DENIED in PART. These defendants must supplement their responses by disclosing to Tanner whether or not the provided documents were their respective daily enforcement logs or just summaries. If the latter, defendants must also provide their actual daily enforcement logs for those dates. If defendants no longer have the relevant daily enforcement logs, they must explain why they are unable to produce the logs.

6. **Stanley and Johnson's Responses to Requests for Admission Concerning Meadow Creek Road Width.**

Tanner requested Stanley and Johnson to admit that Meadow Creek Road is a

twenty-four foot wide paved roadway with shoulders. Stanley admitted that he has not measured the width of the roadway, but that it appears to be twenty-four feet wide at the location the defendants operated game check stop in question. Johnson denies the request because he does not know the width of the road.

The Court agrees with Stanley and Johnson that these responses are more than fair. For whatever reason, Tanner seeks to establish that Meadow Creek Road is twenty-four feet wide, paved, and has shoulders. Tanner does not, however, specify any point on Meadow Creek Road for measurement. Neither Stanley nor Johnson know the width of the road, which is what they stated in their responses. Notwithstanding, Stanley admits that the road appears to be twenty-four feet wide at the location where they stopped Tanner. For all intents and purposes, this seems to meet the substance of Tanner's request.

If, on the other hand, Tanner is requesting to know the width of Meadow Creek Road in its entirety, the Court finds that it would be unreasonable to require Stanley and Johnson to measure the width of Meadow Creek Road, a road that runs for nearly 25 miles through Kootenai National Forest, in its entirety. Thus, the portion of Tanner's motion that relates to Stanley and Johnson's Responses to Requests for Admission concerning the width Meadow Creek Road is DENIED.

### 7. Schriever's Responses to Request for Admission 9–14.

Tanner requests Schriever to admit to certain legal interpretations of Idaho Code section 36-1201. For example, Request for Admission 9 states "Admit that Idaho Code 36-1201 (EXHIBIT X) only requires fishermen, hunters, and trappers to stop at game check

stations."[10] Schriever objected to the requests as vague and ambiguous, then denied the requests. Tanner believes that the objections somehow makes Schriever's denials insufficient.

It appears that Tanner wants the Court to require Schriever to admit or deny free from any objections. The Court will not indulge. Notwithstanding Schriever's objections, he denied Tanner's request for admission. Unless Schriever makes a renewed objection at some later point, he is bound to that answer. The Court finds there is no need at this point—substantively or procedurally—to require Schriever to forgo his objections. Thus, the portion of Tanner's motion that relates to Schriever's Response to Request for Admission 9–14 is DENIED.

### 8. Tanner's Third and Fourth Set of Requests for Production

Lastly, Tanner propounded more discovery requests on Schriever to which Schriever has not yet responded.[11] The Court will not go into each of the thirteen requests, but will state that it has reviewed them and believes them to be nearly identical to many requests Tanner has already made. Though Tanner is unsure what the objections will be, if any, he preemptively opposes Schriever's responses because he doubts that the searches were proper and wants to verify the results. Schriever states that they have already turned over all the information they have regarding these requests. Further, according to Schriever, the searches Tanner is requesting would cost IFG hundreds of thousands of dollars.

---

[10] In relevant part, Idaho Code section 36-1201 states: "No fisherman, hunter, or trapper shall refuse or fail to . . . stop and report at a wildlife check station encountered on his route of travel when directed to do so by personnel on duty."

[11] As of the date of this order, the Court does not know if Schriever has yet responded to these discovery requests.

Though Schriever's response to Tanner's motion implies he will be objecting to Tanner's third and fourth requests for documents, that issue is not properly before the Court now. It would be premature for the Court to rule on the sufficiency of Schriever's response when the Court does not know what Schriever's response will be.

The parties may, though, use the remainder of this decision as guidance for any future discovery disputes. Though an analysis of the sufficiency of any discovery request and its accompanying response is unique and fact-driven, the analysis contained in this order is applicable to all discovery requests in this case. Should the parties again disagree over the proportionality of a request or the need for independent verification, they should refer to this decision before involving the Court.

## VI. ORDER

IT IS HEREBY ORDERED THAT:

1. Tanner's Motion for ECF Notifications (Dkt. 41) is DENIED.
2. Tanner's Motion to Compel (Dkt. 42) is GRANTED in PART and DENIED in PART, as outlined above.
3. IFG must identify an ESI Liaison in accordance with the Court's Discovery Plan. Dkt. 39.

DATED: October 29, 2019

David C. Nye
Chief U.S. District Court Judge